# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **TERRY DEWAYNE JAMES,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 6:21-cv-01317-RDP |
| } | |
| **KILOLO KIJAKAZI, Commissioner of** } | |
| the Social Security Administration } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Terry Dewayne James brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I.    Proceedings Below

This action arises from Plaintiff's application for a period of disability and DIB filed on July 18, 2019, alleging an onset date of disability of December 31, 2018. (Tr. 51, 167-69). Plaintiff's application was denied on September 13, 2019. (Tr. 67-71). Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 74). Plaintiff's request was granted, and a hearing was held on December 7, 2020. (Tr. 30-50). Plaintiff, Plaintiff's counsel, and Vocational Expert ("VE") Matthew McClanahan attended the hearing. (Tr. 30). On February 24, 2021, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. (Tr. 15-23).

On March 4, 2021, Plaintiff submitted a request for review of the ALJ's decision with the Appeals Council. (Tr. 164-166). The Appeals Council denied Plaintiff's request for review on August 12, 2021, determining that he did not present a basis for changing the ALJ's decision. (Tr. 1-3). Therefore, the ALJ's decision became the final decision of the Commissioner and a proper subject of this court's appellate review. (Tr. 1).

At the time of the hearing, Plaintiff was 58 years old, had achieved a high school education, and had finished four years of apprentice school for drafting and welding. (Tr. 41). Plaintiff has previous work experience as a welder and foreman in the sheet metal fabrication industry. (Tr. 42). Plaintiff testified that he had worked in the sheet metal industry for over 35 years and that his work included welding, building metal fittings, and fabricating and installing duct work. (Tr. 42-43).

At the hearing, Plaintiff alleged limitations based upon glaucoma, cataracts, headaches, leukemia, and the effects of chemotherapy treatment for his leukemia, including neuropathy which causes numbness in his feet. (Tr. 34-41). Plaintiff testified his eye problems do not allow him to read for long periods of time without headaches. (Tr. 34-36). Plaintiff further testified he was able to work during his first round of chemotherapy, but there was "no way" he would be able to work during the next round that was scheduled to start the month after the hearing. (Tr. 36). Because chemotherapy would weaken his immune system, Plaintiff testified he thought it would be prudent to not work during treatment while the spread of COVID-19 was prevalent. (Tr. 36-37). Plaintiff further testified that chemotherapy caused him to suffer neuropathy in his feet and he could not stay on his feet over an hour, nor could he feel a ladder or stairs beneath his feet when climbing them. (Tr. 37-38). Plaintiff stated he would have to sit for 15-20 minutes before and after one-hour intervals of standing, he would be comfortable carrying ten pounds, and his pain level usually stayed a six on a scale from one to ten. (Tr. 38-39).

The VE testified a hypothetical person with all Plaintiff's factors (age, education, work experience, and limitations included in his residual functional capacity ("RFC")) could perform the work entailed in jobs that exist in significant numbers in the national economy. (Tr. 45-49). Specifically, the VE testified a hypothetical person with Plaintiff's characteristics could perform the duties of the following jobs: (1) at the medium exertional level, a dining room attendant, hand packager, and cook helper, (2) also at the medium exertional level, Plaintiff's past relevant jobs of a welder fitter and supervisor of metal fabrication, and (3) at the sedentary level, an order clerk, final assembler, and bonder of semi-conductors.

In Autumn 2007, Plaintiff was noted to have a relative expansion of lymphocytes with an immunophenotype consistent with chronic lymphocytic leukemia. (Tr. 355, 477, 487). And in October 2009, Plaintiff was diagnosed with B-cell chronic lymphocytic leukemia. (*Id.*). In February 2010, Plaintiff finished three cycles of fludarabine and mitoxantrone, which are both chemotherapy drugs. (*Id.*). At his July 2014 annual follow-up, Dr. Randall Davis of UAB Hematology Oncology Clinic noted Plaintiff complained of neck pain and said it had been present for a year. (Tr. 355). At the next year's follow-up in July 2015, Dr. Davis labeled Plaintiff's main complaint as neuropathy, which he noted was "unchanged." (Tr. 347). Again, in July 2016 and July 2017, Dr. Davis noted Plaintiff's complaint of neuropathy but reported both times that his use of MS Contin and Norco made the pain bearable. (Tr. 314, 321).

On February 13, 2017, Plaintiff had an initial visit with Dr. Joseph Tyler Fuqua, his primary care physician. (Tr. 333-41). At that visit and in follow-up visits over the next two years, Dr. Fuqua noted that Plaintiff had severe peripheral neuropathy and was being treated with daily extended-release morphine (MS Contin) and Norco. (Tr. 298, 333, 459). On February 19, 2019, Dr. Fuqua referred Plaintiff to a new pain specialist. (Tr. 459). On February 20, 2020, Dr. Fuqua noted

Plaintiff's recurrence of B-cell chronic lymphocytic leukemia and continuing severe peripheral neuropathy. (Tr. 689). Plaintiff complained that his feet stayed "asleep all the time" but reported that he continued going to the pain clinic. (*Id.*). At that same visit, Dr. Fuqua completed Plaintiff's Clinical Assessment of Pain ("CAP") and Physical Capacities Evaluation ("PCE") forms. (Tr. 493-94). Of relevance here, Dr. Fuqua indicated in the forms his opinion that Plaintiff had pain present to such an extent as to be distracting from adequate performance of daily activities of work and that he could only occasionally perform gross manipulation. (*Id.*).

During a visit on June 23, 2020 with Dr. Davis at the UAB Hematology Oncology Clinic, Dr. Davis noted that Plaintiff had been "fishing, hunting, and remaining active." (Tr. 858). Similarly on September 29, 2020, Dr. Davis noted that Plaintiff had been "doing well" and had no new complaints. (Tr. 880). And, on December 18, 2020, Dr. Davis opined that, although Plaintiff's leukemia recurrence had been noted since February 2020, he would soon have to undergo anti-CD20 immunotherapy and a Bruton's Tyrosine Kinase inhibitor. (Tr. 910).

Plaintiff's pain treatment records begin with notes from Dr. Paola Tumminello at Walker Neurology on May 1, 2019. (Tr. 362-68). Dr. Tumminello noted that Plaintiff reported "only the narcotics" (Morphine and Hydrocodone) worked to ease his pain from neuropathy. (Tr. 362). On May 28, 2019, Plaintiff made an initial visit at Alabama Pain Physicians with Dr. Erin Morella, where he complained of the neuropathy in his feet that was aggravated by standing, walking, lying flat, and physical activity. (Tr. 372-87). Plaintiff reported that his pain was generally 8 out of 10. (Tr. 374). Plaintiff was prescribed Morphine and Norco. (Tr. 384). From the first follow-up visit until his last visit of record on October 8, 2020, Plaintiff's medications were noted to reduce his pain anywhere from 40-80%, which in turn improved his ability to perform activities of daily living, as well as to drive, walk, work, sleep, sit, stand, and do hobbies. (Tr. 388-89, 425-26, 442-

43, 497-98, 515-16, 534-35, 554-55, 573-74, 592-93, 612-13, 632-33, 651-52, 780-81, 799-800, 819-20, 838-39, 890-91). During his visit on February 10, 2020, it was noted that Plaintiff reported that his medications "allowed him to keep working." (Tr. 608).

Plaintiff also experiences open angle glaucoma of both eyes and a bilateral nuclear cataract. (Tr. 283, 285, 414). In June 2017, Plaintiff was prescribed latanoprost drops at the Callahan Eye Hospital Clinic by Dr. Darrell Joiner. (Tr. 286). In August 2019 at an annual follow-up visit, Plaintiff reported having stable vision. (Tr. 414).

**II.   ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." 20 C.F.R. § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of this criteria, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.   If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 31, 2018 and has the severe impairments of peripheral neuropathy and B-cell chronic lymphocytic leukemia, satisfying steps one and two of the analysis. (Tr. 18). However, at step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.*).

The ALJ then determined Plaintiff's RFC, finding him capable of performing medium work as defined in 20 C.F.R § 404.1567(c), adding the following limitations: (1) no climbing ladders, ropes, or scaffolds, (2) occasional crouching, (3) occasional kneeling, (4) no foot control operation, (5) no driving, and (6) no unprotected heights. (Tr. 19). The ALJ made this

determination only after assessing Plaintiff's subjective allegations in the accordance with the regulatory factors, as well as the record medical evidence, relevant opinions, his Function Report, and testimony from the hearing. (Tr. 23).

The ALJ found the objective medical evidence in the record did not support Plaintiff's complete inability to work. (*Id.*). Plaintiff was prescribed various medications over the years that were effective in reducing the overall severity of his neuropathy and allowed him to function properly -- even work. (Tr. 21). Likewise, the medications reduced Plaintiff's pain anywhere from 40-70%. (*Id.*). Plaintiff's physical examinations showed a normal range of motion throughout, without swelling or deformities. (*Id.*). Plaintiff was reported capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently by Dr. Fuqua. (*Id.*). The ALJ found Dr. Fuqua's opinion unpersuasive that Plaintiff could only occasionally perform gross manipulation and would be distracted by pain enough to render him unable to adequately perform daily activities or work. (Tr. 22). The ALJ stated Dr. Fuqua's opinion was inconsistent with Plaintiff's own admissions and progress reports. (*Id.*).

At step four, based on the testimony of the VE, the ALJ found Plaintiff capable of performing past relevant work as a supervisor of metal fabrication (DOT Code 809.130-014, SVP 8). (Tr. 23). Accordingly, the ALJ found that Plaintiff had not been under a disability as defined in the Act from his alleged onset date through the date of the decision. (*Id.*).

### III.   Plaintiff's Argument for Remand or Reversal

Plaintiff makes a specific argument in favor of reversible error. He contends that the Commissioner's decision should be reversed because the ALJ's treatment of Dr. Fuqua's opinion is not supported by substantial evidence. (Doc. #9 at 9).

**IV.    Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.    Discussion**

    **A.    The ALJ Did Not Err in Finding that Dr. Fuqua's Opinion Was Not Entirely Persuasive.**

Plaintiff argues that the ALJ erred in finding Dr. Fuqua's CAP and FPE to be not "entirely persuasive," asserting that the ALJ improperly treated two sections—one from the CAP and one

from the PCE. (Doc. #9 at 10-11). First, Plaintiff asserts that the ALJ found unpersuasive Dr. Fuqua's opinion that he could only occasionally perform gross manipulation (*i.e.*, grasping, twisting, and handling). (Tr. 21-22, 494). (Doc. #9 at 15). Second, he contends that the ALJ did not adopt Dr. Fuqua's opinion that his pain would distract him from adequately performing daily activities and work or cause total abandonment of tasks. (Tr. 21-22, 493). (Doc. #9 at 15).

      Plaintiff makes the argument that the ALJ only determined that Dr. Fuqua's opinion was not entirely persuasive due to "supportability issues in one area of the opinion"—namely, the ALJ's rejection of Dr. Fuqua's opinion that Plaintiff could only occasionally perform gross manipulation. (Doc. #9 at 15). Figuratively, Plaintiff essentially argues that the ALJ threw the baby out with the bath water. He contends that because the ALJ found one of Dr. Fuqua's findings on the PCE to be unpersuasive, the ALJ in turn discounted the rest of Dr. Fuqua's findings on the forms, including the assessment that he would be unable to work. Plaintiff states, "Dr. Fuqua never opined [he] was unable to work due to issues with gross manipulation." (*Id.* at 20). But nothing in the ALJ's decision (or for that matter, in the record) supports that contention.

      Rather, while determining Plaintiff's RFC, the ALJ adopted all the limitations that Dr. Fuqua proposed in the PCA, save only for the limited limitation on gross manipulation. (Tr. 21-22, 494). But Plaintiff does not assert that the ALJ erred in determining that Plaintiff did not experience any limitations performing gross manipulation. Further, to the extent that Dr. Fuqua sought to define Plaintiff's physical capacities and functional limitations, those opinions are not entitled to weight because Plaintiff's RFC is a legal conclusion reserved exclusively for the ALJ. *Howard v. Commissioner*, 762 Fed. App'x. 900, 904 (11th Cir. 2019). *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Plaintiff also takes issue with the ALJ's rejection of Dr. Fuqua's opinion that neuropathic pain in his feet would "be what kept him from employment." (Doc. #16 at 15-16). First and foremost, "[a] medical source's opinion that a claimant is 'disabled' or 'unable to work' is not dispositive of a disability claim because the determination is reserved to the [ALJ] acting on behalf of the Commissioner." *Walker v. Commissioner*, 987 F.3d 1333, 1339 (11th Cir. 2021). 20 C.F.R § 404.1527(d)(1). Again, it is the ALJ who determines whether a claimant's impairments are disabling. And while Dr. Fuqua's findings may constitute important medical evidence, his assessments in the CAP are inherently not valuable, regardless of his history with Plaintiff. All of Dr. Fuqua's assessments in the CAP are without explanation and are circuitous and conclusory. A "treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). Accordingly, the ALJ noted Dr, Fuqua did not "provide articulation about evidence that is inherently neither valuable nor persuasive in accordance with 20 C[.]F[.]R[. §] 404.1520b(c)." (Tr. 22).

Here, substantial evidence supports the ALJ's determination that Dr. Fuqua's assessment that Plaintiff would be distracted to an extent that precludes work is unpersuasive. In determining the persuasiveness of a source from the medical record, an ALJ considers the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other facts such as the medical source's familiarity with other evidence in the claim. 20 C.F.R. § 416.920c(c). However, supportability and consistency are the most important factors. 20 C.F.R § 416.920c(b)(1).

First. the evidence that Plaintiff offers for the support and consistency of Dr. Fuqua's conclusory claims in the CAP is not convincing. (Doc. #9 at 15-19). As related to supportability,

Plaintiff only offers evidence that he was treated by Dr. Fuqua for severe neuropathy and that Dr. Fuqua referred him to pain specialists. (*Id.* at 15-17). As related to consistency, Plaintiff only offers that other medical sources noted and treated his neuropathy and that he regularly reported an average daily pain level of 6 or 7 out of 10. (*Id.* at 17-18). Pointing to this evidence does not undermine the ALJ's findings. But even if the court found that the evidence preponderates against the Commissioner's decision, the court must still affirm if the decision is supported by substantial evidence. *Bloodsworth*, 703 F.2d at 1239. 42 U.S.C. § 405(g). And, as the Commissioner points out, "[t]he issue is whether substantial evidence supports the ALJ's decision, not whether evidence supported the medical opinion." (Doc. #10 at 12). The court does not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

In explaining his determination of Plaintiff's RFC, the ALJ gave a detailed summary of the record, and pointed to substantial evidentiary support for his evaluation of Dr. Fuqua's CAP. For example, the ALJ noted that treatment entries demonstrated that Plaintiff's medication reduced his pain anywhere from "40%-70%," allowing him to perform daily activities and function satisfactorily. (Tr. 21). The ALJ observed that Plaintiff's physical examinations showed he had a full range of motion throughout. (Tr. 21). Plaintiff reported excellent energy and was able to fish and hunt, even after his leukemia recurrence in February 2020. (Tr. 21).

The ALJ also specifically addressed Dr. Fuqua's CAP. Regarding Dr. Fuqua's assessment that Plaintiff would be too distracted by his pain to work, the ALJ noted that "[i]n light of [Plaintiff]'s own admissions and progress reports, this particular opinion appears inconsistent with the actual evidence of record." (Tr. 22). As earlier mentioned, an ALJ need not point to evidence on the record to demonstrate that a medical opinion that is inherently neither persuasive nor

11

valuable *(i.e.*, the CAP) is unpersuasive. 20 C.F.R § 404.1520b(c). So, this articulation suffices. However, the Commissioner's brief supplies the court with good evidence of non-persuasiveness. Most notably, progress notes from Dr. Fuqua on February 19, 2020 (from the same day that he completed the CAP) indicate that Plaintiff remained "very active at work… as a sheet metalist." (Tr. 692). Additionally, an entry dated May 5, 2020 from the Alabama Pain Physicians indicates that Plaintiff noted his ability to work had improved. (Tr. 652). The ALJ's treatment of Dr. Fuqua's CAP and determination of Plaintiff's RFC are supported by substantial evidence.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 29, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE